IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA


JACK PINNOCK, o/b/o,
ADA CONSULTANTS AND ADVISORS, INC.,

     Plaintiff,

v.                                        CASE NO. [number]

WAL-MART STORES, INC.,

     Defendant.


## COMPLAINT


Plaintiff, JACK PINNOCK, o/b/o, ADA CONSULTANTS AND ADVISORS, INC., sues defendant, WAL-MART STORES, INC., and alleges:

### NATURE OF THE ACTION

1. This is an action for trade secret misappropriation pursuant to the Florida Uniform Trade Secrets Act, Fla. Stat. §688.001 *et. seq.*, to enjoin the use of trade secrets by defendant, and to recover damages from the defendant for misappropriation of trade secrets; civil theft pursuant to the Civil Remedies for Criminal Practices Act, Fla. Stat. §722.104, §722.11, and §812.081; misappropriation of property by unfair, deceptive, and unconscionable trade practices pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et. seq.*; replevin; conversion; breach of confidentiality; fraudulent misrepresentation; negligent misrepresentation; breach of oral contract, breach of an implied contract; unjust enrichment; and other statutory and common law violations.

2. The amount of damages sought in this action exceeds $15,000.

## THE PARTIES

3. Plaintiff, JACK PINNOCK, (PINNOCK) was president and sole owner of ADA CONSULTANTS AND ADVISORS, INC., (ADA CONSULTANTS) a corporation organized and existing under the laws of Florida, with its principal place of business at 7526 Treasure Island Court, Orlando, Orange County, Florida.

4. Defendant, WAL-MART STORES, INC., (WAL-MART) is a foreign corporation authorized to do business in the state of Florida.

## JURISDICTION AND VENUE

5. Defendant is doing business in, and has committed acts of misappropriation, theft, breach of implied contract, fraud, and other civil wrongs in, and/or may be otherwise found in this Judicial Circuit, and therefore, this Court has jurisdiction over the defendant.

6. Plaintiff is a resident of Orange County, Florida.

## GENERAL ALLEGATIONS

7. In the spring of 2005, plaintiff and defendant entered into an oral agreement for plaintiff to independently determine the extent of violations of the Accessibility Standards of the Americans with Disabilities Act of 1990, Title III, ("ADA") regarding accommodation violations in certain existing Wal-Mart stores in Florida and California, hereinafter referred to as the "Survey." Later, this Survey was broadened to include additional states.

8. On July 15, 2005, after independently surveying numerous Wal-Mart stores in Florida, California, Utah, and Colorado, plaintiff made a proposal to defendant to provide the defendant with a complimentary "ADA Analysis Report" for the stores plaintiff

surveyed. In return, plaintiff asked defendant to be considered by defendant for any ADA consulting and general contracting services that defendant employed or contracted for concerning the modification of existing Wal-Mart stores through out the nation to become ADA compliant.

9.  Defendant offered, instead, to retain plaintiff for ADA consulting and general contracting services for the modification of existing Wal-Mart stores in the states of Florida and California to become ADA compliant. Defendant promised plaintiff that defendant would "evaluate [his] performance in Florida and California" before offering him an agreement to perform ADA consulting and general contracting services for the modification of existing Wal-Mart stores through out the remainder of the United States. Plaintiff accepted defendant's offer and continued his survey of existing Wal-Mart stores in Florida and California.

10. Defendant orally agreed and encouraged plaintiff to continue his analysis of Wal-Mart stores, granting him unfettered access to numerous Wal-Mart stores across the nation to survey and evaluate for ADA violations.

11. Defendant agreed to pay plaintiff for his services in conducting the survey "retroactively," as soon as defendant could draft a contract because defendant "did not want to appear to be taking advantage of a small minority business."

12. Between July 15, 2005 and September 2, 2005, plaintiff surveyed and evaluated thirty different Wal-Mart stores in seven states, documenting, by detailed photographic and other graphic evidence, over nine hundred (900) ADA violations at those stores, which represented only a sampling of ADA violations at the stores plaintiff surveyed. Many of

the ADA violations were serious violations that could result in injury or death to disabled customers.

13. On October 19, 2005, plaintiff delivered to defendant four copies of a confidential, three hundred (300) plus page detailed analysis of the findings and recommendations of plaintiff's ADA survey results entitled, "Report of Findings ADA Survey Results," together with a "Numerical Executive Summary of Findings & Statistical Abstract," a "Proposed Plan of Action," and, most importantly, a "Disclaimer and Disclosure Statement," hereinafter referred to collectively as the "Survey Report."

14. The Survey Report and the information contained within the Survey Report constitute protected trade secrets pursuant to §688.001 et. seq., Fla. Stat., and other confidential and proprietary information prepared by plaintiff, and both plaintiff and defendant treated the Survey Report and the information contained within the Survey Report as protected trade secrets and other confidential and proprietary information.

15. The "Disclaimer and Disclosure Statement" expressly provided that plaintiff was the owner of all work product provided to the defendant and that the confidential Survey Report and all of its findings, recommendations, and proposals were for the "exclusive" viewing of Wal-Mart employees, executives, and board members only. See: Disclaimer and Disclosure Statement, attached as Exhibit "A."

16. On October 22, 2005, Doug Bryant, the Senior Architect for defendant, requested the plaintiff provide additional photographic documentation of some of the violations found in the Survey Report.

4

17. On November 7, 2005, Doug Bryant wrote to the plaintiff and advised plaintiff that the defendant was proceeding with work orders to correct some of the violations listed in the Survey Report.

18. On November 16, 2005, Doug Bryant wrote to plaintiff and advised plaintiff that Deidre Davis, Director of ADA Services for the defendant, would be coordinating the implementation of any modifications related to the list of violations, recommendations, and proposals compiled and documented in plaintiff's confidential Survey Report. Plaintiff communicated with Ms. Davis that same day and offered to provide her a separate copy of the "Numerical Executive Summary of Findings & Statistical Abstract" or any other aspect of the Survey Report she might require in her review of the project.

19. Sadly, despite cordial and frequent communications and collaboration with Doug Bryant, plaintiff discovered that Ms. Davis failed to return phone calls, respond to e-mail communications or otherwise acknowledge any of the work done or any of the confidential work product produced by plaintiff for defendant's review.

20. Nevertheless, upon information and belief, defendant began misappropriating and implementing many of the precise, detailed, and confidential recommendations contained in plaintiff's confidential Survey Report, including reconstruction and modification of entire departments in many of its existing and new Wal-Mart stores in Central Florida and elsewhere.

21. Moreover, upon information and belief, defendant also provided copies of plaintiff's confidential Survey Report to local contractors, who are direct competitors of plaintiff, so that these local contractors could use plaintiff's confidential work product to modify existing Wal-Mart stores in Central Florida and elsewhere to become ADA compliant.

5

22. Upon information and belief, defendant also provided copies of plaintiff's confidential Survey Report to local contractors, who are direct competitors of plaintiff, so that these local vendors could use plaintiff's confidential work product to construct new Wal-Mart stores in Central Florida and elsewhere to be ADA compliant.

23. On December 23, 2005, Deidre Davis finally spoke with plaintiff and offered to provide a "mentoring" relationship with plaintiff as he assisted defendant in identifying and correcting ADA deficiencies.  Davis and plaintiff also discussed plaintiff's revised Proposed Plan of Action, which included existing Wal-Mart stores in New England in addition to the existing Wal-Mart stores in Florida and California, previously agreed to. Davis voiced no objection to extending the plan to include existing Wal-Mart stores in New England.

24. Ms. Davis told plaintiff that she was "very busy" during the holidays, but she would "make sure" she and plaintiff met to discuss further working arrangements between plaintiff and defendant "after the holidays."  Despite her promises to do so, Ms. Davis never followed through on these promises.  Meanwhile, upon information and belief, defendant continued to misappropriate and implement confidential recommendations and proposals from plaintiff's confidential Survey Report at various existing and new Wal-Mart stores in Central Florida and elsewhere.

25. On June 12, 2006, after many months of trying to speak with Ms. Davis, without success, plaintiff wrote to and advised Lee Scott, defendant's Chief Executive Officer and Chairman of the Board of Directors, of the numerous ADA violations at the surveyed Wal-Mart stores and the difficulty plaintiff encountered implementing the "Plan of Action" previously agreed to by the parties.

6

26. On August 7, 2006, defendant, despite knowledge of over nine hundred (900) ADA violations, including detailed photographic and other graphic evidence, in just thirty stores, and despite tacit acknowledgment of many of these violations by misappropriating and implementing many of plaintiff's recommendations and proposals in plaintiff's confidential Survey Report, advised plaintiff that it "respectfully disagreed" with the findings of plaintiff's confidential Survey Report and that it would no longer be using plaintiff's services. See: Letter attached as Exhibit "B."

27. Upon learning of defendant's shocking breach of agreement and defendant's apparent change in position, plaintiff, pursuant to the confidentiality agreement in the "Disclaimer and Disclosure Statement," demanded that defendant return all of plaintiff's confidential materials, including every copy of plaintiff's Survey Report. Plaintiff also demanded defendant,

> "Send a statement that none of the research was used in any of Wal-Mart's daily operations, such as the issue of change orders to correct ADA violations outlined in the study, nor given to or shared with any sources outside (especially potential ADA Consultant competitors) of Wal-Mart Employees, Officers and or directors, as outlined in the Disclosure and Stipulation agreement. Otherwise please call me to make payment Arrangement for Services rendered."

See: E-mail correspondence attached as Exhibit "C."

28. On September 1, 2006, defendant promised to return all of plaintiff's confidential materials, including every copy of plaintiff's Survey Report. However, defendant did not do so.

29. On September 19, 2006, plaintiff again insisted defendant return all of plaintiff's confidential materials, including every copy of plaintiff's Survey Report. Again, defendant never returned plaintiff's confidential work product and trade secrets.

7

30. On September 21, 2006, plaintiff wrote to Linda Whittaker, Associate General Counsel for defendant, demanding the defendant return plaintiff's confidential work product and trade secrets.

31. On September 22, 2006, Ms. Whittaker promised she would find out whether the materials were returned.   On September 25, 2006, Ms. Whittaker advised, "My understanding is that the materials were returned to you last Thursday."

32. On September 28, 2006, plaintiff wrote Ms. Whittaker and advised,

> "I received the Federal Express package on Tuesday. Unfortunately there were only 2 sets of documents in the package. The package I received contained the documents sent to Mr Scott, and, I assume, the set that the architectural staff gave to Deidre Davis. However, the three remaining sets of documents given to the architectural staff were not included. Also, there was no written assurance that these plans had not been shared with architects or others outside of Wal-Mart Employees. It sure would be nice to put this to rest, and not have to spend any more time on this. Can you please have these items sent to me, and let me know the progress?"

See: E-mail correspondence attached as Exhibit "D."

33. On October 4, 2006, plaintiff again wrote to Ms. Whittaker asking about the status of the return of plaintiff's confidential work product and trade secrets.   Ms. Whittaker never responded to this request.

34. Defendant has failed to return plaintiff's confidential survey report and further refused to provide a written statement that defendant did not use any of plaintiff's confidential work product in any of defendant's daily operations, such as the issue of change orders to correct ADA violations outlined in the study, nor given to or shared with any sources outside defendant's employees, officers or directors.

35. Since the termination of the agreement between the parties, defendant has engaged in misappropriating and implementing many of plaintiff's recommendations and proposals

8

in plaintiff's confidential Survey Report, utilizing therein plaintiff's trade secrets learned during the term of the agreement and the business relationship between the parties

36. On January 3, 2008, after discovering several Central Florida Wal-Mart stores had adopted, verbatim, many of the plaintiff's recommendations and proposals in plaintiff's confidential Survey Report, plaintiff demanded payment for services because of defendant's breach of agreement and defendant's breach of the terms of the "Disclaimer & Disclosure Statement," previously accepted and agreed to by the parties. See: Letter attached as Exhibit "E."

## COUNT I
## VIOLATION OF FLORIDA UNIFORM TRADE SECRETS ACT

37. Plaintiff realleges the factual allegations in paragraphs 7-36.

38. The Survey Report and the information contained within the Survey Report prepared by plaintiff constitute protected trade secrets pursuant to §688.001 *et. seq.*, Fla. Stat., also known as The Florida Uniform Trade Secrets Act, and both plaintiff and defendant treated the Survey Report and the information contained within the Survey Report as protected trade secrets and other confidential and proprietary information.

39. Plaintiff, at all relevant times, undertook reasonable steps to safeguard all of its trade secrets and other confidential and proprietary information. Plaintiff inserted confidentiality language in its "Disclaimer & Disclosure Statement," previously accepted and agreed to by the parties and repeated demands the return of plaintiff's confidential trade secrets and confidential work product.

40. Plaintiff's trade secrets possessed independent economic value in that it identified hundreds of ADA violations at some of the defendant's existing Wal-Mart stores and proposed recommendations to bring those stores into compliance with ADA accessibility

standards. The failure to comply with ADA standards could result in fines and/or civil litigation costing defendant hundreds of millions of dollars. Moreover, the implementation of plaintiff's recommendations would not only decrease the risk of fines and/or civil litigation, but would add to defendant's goodwill by proactively accommodating the disabled consumers and customers in the local communities.

41. The herculean task of compiling, analyzing, and identifying wide scale ADA violations and recommendations for corrections had not been previously done by defendant or any of its previous ADA consultants. Thus, the subject matter of the Survey Report and the information contained within the Survey Report were not known to defendant or to the public prior to plaintiff's surveying, identifying, and compiling data to produce the Survey Report, and were not readily ascertainable by the defendant or public.

42. The subject matter of the Survey Report and the information contained within the Survey Report provided to defendant information, advantage, and/or opportunity that defendant would not otherwise have had.

43. Defendant used, and upon information and belief is still using, improper means to knowingly misappropriate plaintiff's trade secrets with intent to deprive plaintiff of its property and rights.

44. Defendant violated and continues to violate the Florida Uniform Trade Secrets Act by using and disclosing plaintiff's trade secrets, without plaintiff's consent, in the course of having operated, and currently operating, its business.

45. Plaintiff is entitled to injunctive relief to prohibit defendant's continued use and disclosure of plaintiff's trade secrets.

10

46. As a direct and proximate result of defendant's unauthorized disclosure and misappropriation of plaintiff's trade secrets, plaintiff has suffered, and will continue to suffer, damages in the form of lost income, profits, and business opportunities.

47. Plaintiff is entitled to obtain injunctive relief and recover actual damages based on defendant's misappropriation and disclosure of its trade secrets.

48. Defendant's misappropriation and disclosure of plaintiff's trade secrets is and has been willful and malicious and was done with the intent to injure plaintiff, so that an award of exemplary damages is appropriate.

49. Plaintiff is entitled to an award of reasonable attorney's fees because defendant's misappropriation and disclosure was and is willful and malicious.

Wherefore, plaintiff requests that the court grant:

A. An order temporarily restraining defendant from using plaintiff's recommendations and proposals in plaintiff's confidential Survey Report, requiring defendant to return to plaintiff every copy of plaintiff's confidential Survey Report, requiring defendant to destroy every document in defendant's possession containing any confidential information derived from plaintiff's confidential Survey Report; and requiring defendant to identify every person or entity that defendant has provided a copy of plaintiff's confidential Survey Report or any of the confidential information derived from plaintiff's confidential Survey Report;

B. After final hearing on this matter, an injunction restraining defendant from using plaintiff's recommendations and proposals in plaintiff's confidential Survey Report, requiring defendant to return to plaintiff every copy of plaintiff's confidential Survey Report, requiring defendant to destroy every document in defendant's possession

11

containing any confidential information derived from plaintiff's confidential Survey Report; and requiring defendant to identify every person or entity that defendant has provided a copy of plaintiff's confidential Survey Report or any of the confidential information derived from plaintiff's confidential Survey Report;

C. Damages against defendant in excess of $15,000, including, but not limited to, damages for defendant's unjust enrichment;

D. Exemplary damages against defendant in the amount of twice the amount of any award for actual loss or unjust enrichment;

E. Reasonable royalty for unlawful use of plaintiff's trade secrets;

F. Attorneys fees for bringing this action;

G. Costs of suit; and

H. Such other relief as the court deems proper.

## COUNT II
## CIVIL THEFT

50. Plaintiff realleges the factual allegations in paragraphs 7-36.

51. Plaintiff has complied with a conditions precedent to bring this action, including written notice to defendant of plaintiff's demand for treble damages, and allowance of thirty (30) days for repayment, which has expired.

52. The Survey Report and the information contained within the Survey Report constitute protected trade secrets pursuant to §688.001 *et. seq.*, Fla. Stat., and other confidential and proprietary information prepared by plaintiff, and both plaintiff and defendant treated the Survey Report and the information contained within the Survey Report as protected trade secrets and other confidential and proprietary information.

12

53. Plaintiff, at all relevant times, undertook reasonable steps to safeguard all of its trade secrets and other confidential and proprietary information.

54. The subject matter of the Survey Report and the information contained within the Survey Report were not known to defendant or to the public prior to plaintiff's surveying, identifying, and compiling data to produce the Survey Report.

55. The subject matter of the Survey Report and the information contained within the Survey Report provided to defendant information, advantage, and/or opportunity that defendant would not otherwise have had.

56. Defendant agreed to use plaintiff's consulting services and provided free and full access to its existing Wal-Mart stores so plaintiff could survey, identify and compile data to provide defendant with a recommendation and proposal to address and correct ADA violations at defendant's existing Wal-Mart stores so that defendant could comply with ADA standards in those stores.

57. In the alternative, upon information and belief, defendant never intended to engage plaintiff's services, but made material misrepresentations of fact concerning the defendant's agreement to retain plaintiff as a consultant and/or contractor merely to obtain plaintiff's valuable trade secrets without cost to the defendant.

58. Defendant used, and upon information and belief is still using, improper means to knowingly misappropriate plaintiff's trade secrets with intent to deprive plaintiff of its property and rights.

59. Defendant has misappropriated plaintiff's trade secrets to the detriment of plaintiff in violation of Fla. Stat. §688.001 *et. seq.*, and §812.081.

13

60. Defendant has committed civil theft in violation of Fla. Stat. §722.104, §722.11, causing damage to plaintiff that includes damages separate and distinct from those damages caused by defendant's breach of implied contract.

61. Defendant has been unjustly enriched as a result of such misappropriation.

62. As a direct and proximate result of the defendant's conduct, Plaintiff has incurred significant damages, has retained undersigned counsel, and has become obligated to pay said counsel a reasonable attorney's fee for services rendered. Section 772.11, F.S., provides for the recovery of attorney's fees for Civil Theft.

WHEREFORE, Plaintiff demands such relief as this Court deems appropriate including, but not limited to, judgment for treble damages against Defendant and interest, costs, attorney's fees, and such other relief as may be just and proper under the circumstances.

## COUNT III
## VIOLATION OF FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

63. Plaintiff realleges the factual allegations in paragraphs 7-36.

64. Defendant's theft of plaintiff's valuable trade secrets; its refusal to return plaintiff's confidential work product; and its untruthfulness during the course of the transaction, by concealing from plaintiff that defendant was misappropriating plaintiff's trade secrets to identify, address, modify and comply with tens of thousands of ADA violations at defendant's existing Wal-Mart stores, without having to incur the expense of surveying, analyzing, and compiling the data to identify, address, modify, and correct ADA violations in those stores, constitute unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts under Fla. Stat. §501.201 *et. seq.*

14

65. In the alternative, Defendant's theft of plaintiff's valuable trade secrets; its refusal to return plaintiff's confidential work product; and its untruthfulness during the course of the transaction, by concealing from plaintiff that defendant was misappropriating plaintiff's trade secrets by providing plaintiff's trade secrets to plaintiff's competitors to identify, address, modify and comply with tens of thousands of ADA violations at defendant's existing Wal-Mart stores, without having to incur the expense of surveying, analyzing, and compiling the data to identify, address, modify, and correct ADA violations in those stores or being able to do so for substantially less fees, constitute unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts under Fla. Stat. §501.201 *et. seq.*

66. As a result of defendant's conduct, plaintiff has suffered damages.

WHEREFORE, Plaintiff requests a declaratory judgment that defendant's conduct constitutes a violation of Fla. Stat. §501.201 *et. seq.* and demands such relief as this Court deems appropriate including, but not limited to, an award of damages against the defendant and pre-judgment interest, costs, attorney's fees, and such other relief as may be just and proper under the circumstances.

## COUNT IV
## COMMON LAW REPEVIN

67. Plaintiff realleges the factual allegations in paragraphs 7-36.

68. This is an action to recover personal property presently believed to be in the possession of the defendant in Bentonville, AR.

69. Defendant is a foreign corporation authorized to do and is doing business in the state of Florida. Therefore, this court has jurisdiction over the defendant and over the personal property.

70. The description of the property is three or more copies of confidential trade secrets entitled, "ADA Consultants and Advisors Inc. Report of Findings ADA Survey Results," "ADA Consultants and Advisors Inc. Numerical Executive Summary of Findings & Statistical Abstract," "Proposed Plan of Action Submitted to Wal-Mart Stores, Inc," and "Disclaimer & Disclosure Statement Submitted to Wal-Mart Stores, Inc," all created by the plaintiff pursuant to his expertise in ADA consulting services.

71. Plaintiff is the rightful owner of the property as the creator of the property due to plaintiff's services.

72. To the best of plaintiff's knowledge, information, and belief, the value of the property exceeds $310,000.00.

73. The property is wrongfully detained by defendant. Defendant came into possession of the property pursuant to terms of an agreement between the parties, which defendant has breached.

74. To plaintiff's best knowledge, information, and belief, defendant detains the property so that it can utilize plaintiff's confidential trade secrets in identifying, addressing, modifying and complying with tens of thousands of ADA violations at defendant's existing Wal-Mart stores, without having to incur the expense of surveying, analyzing, and compiling the data to identify, address, modify, and comply with ADA standards in those stores.

75. The property has not been taken for any tax, assessment, or fine pursuant to law.

76. The property has not been taken under an execution or attachment of plaintiff's property.

Wherefore, plaintiff requests that the court grant plaintiff judgment for possession of the property.

16

## COUNT V
## COMMON LAW CONVERSION

77. Plaintiff realleges the factual allegations in paragraphs 7-36.

78. On or about September 1, 2006, defendant converted to its own use three or more copies of confidential trade secrets entitled, "ADA Consultants and Advisors Inc. Report of Findings ADA Survey Results," "ADA Consultants and Advisors Inc. Numerical Executive Summary of Findings & Statistical Abstract," "Proposed Plan of Action Submitted to Wal-Mart Stores, Inc," and "Disclaimer & Disclosure Statement Submitted to Wal-Mart Stores, Inc," all created by the plaintiff pursuant to his expertise in ADA consulting services.

79. Plaintiff is the rightful owner of the property as the creator of the property due to plaintiff's services.

80. To the best of plaintiff's knowledge, information, and belief, the value of the property exceeds $310,000.00

81. To plaintiff's best knowledge, information, and belief, defendant converted the property to its own use so that defendant can utilize plaintiff's confidential trade secrets in identifying, addressing, modifying and complying with tens of thousands of ADA violations at defendant's existing Wal-Mart stores, without having to incur the expense of surveying, analyzing, and compiling the data to identify, address, modify, and comply with ADA standards in those stores.

Wherefore, plaintiff demands judgment for damages and costs against the defendant.

## COUNT VI
## BREACH OF CONFIDENTIALITY

82. Plaintiff realleges the factual allegations in paragraphs 7-36.

83. Defendant provided access to and plaintiff protected all confidential information belonging to defendant in the survey of defendant's existing Wal-Mart stores.

84. Plaintiff's Survey Report contained notices of confidentiality, which were recognized freely and accepted on those terms by the defendant upon receiving the Survey Report and plaintiff's valuable trade secrets.

85. All of the information provided by plaintiff to defendant was furnished under conditions of confidence.

86. As such, a confidential relationship existed between plaintiff and defendant.

87. Defendant breached this confidential relationship by making unauthorized use of the Survey Report and the information contained within the Survey Report without permission of plaintiff.

88. Defendant has been unjustly enriched by its breach of the confidential relationship with plaintiff to the detriment of the plaintiff who has suffered substantial damages in excess of $15,000.00

Wherefore, plaintiff demands judgment for damages and costs against the defendant.

**COUNT VII**
**FRAUDULENT MISREPRESENTATION**

89. Plaintiff realleges the factual allegations in paragraphs 7-36.

90. Defendant intentionally made false statements of fact and material omissions to plaintiff, concerning the business relationship between the parties and the true intention of defendant to misappropriate plaintiff's trade secrets for its own use.

91. Specifically, Doug Bryant, the Senior Architect for defendant, offered to retain plaintiff for ADA consulting and general contracting services for the modification of existing Wal-Mart stores in the states of Florida and California to become ADA compliant.

18

Bryant, on behalf of defendant, promised that defendant would "evaluate plaintiff's performance in Florida and California" before offering him an agreement to perform ADA consulting and general contracting services for the modification of existing Wal-Mart stores through out the remainder of the United States.   Bryant, on behalf of defendant, orally agreed and encouraged plaintiff to continue his analysis of Wal-Mart stores, granting him unfettered access to numerous Wal-Mart stores across the nation to survey and evaluate for ADA violations.   Moreover, Bryant, on behalf of defendant, agreed to pay plaintiff for his services in conducting the survey "retroactively," as soon as defendant could draft a contract because defendant "did not want to appear to be taking advantage of a small minority business."   Finally, on November 7, 2005, Bryant wrote to the plaintiff and advised plaintiff that the defendant was proceeding with work orders to correct some of the violations listed in the Survey Report.

92. Bryant made these and other false statements with the expressed purpose of inducing plaintiff to rely upon these statements, to complete the surveys, and to provide the trade secrets to the defendant at no cost to the defendant so that defendant could wrongly and unlawfully obtain the services of plaintiff and the trade secrets without having to pay for them.

93. Bryant knew these statements were false when he made them to plaintiff on behalf of the defendant, or, in the alternative, he knew he was without knowledge of the truth of these statements.

94. Bryant intended plaintiff to rely upon the above referenced false statements of material fact.

19

95. Plaintiff relied upon defendant's false statements of fact, accepted defendant's offer, continued his survey of existing Wal-Mart stores, and eventually provided to defendant valuable, confidential trade secrets.

96. In addition, on December 23, 2005, Deidre Davis, Director of ADA Services for the defendant, spoke with plaintiff and offered to provide a "mentoring" relationship with plaintiff as he assisted defendant in identifying and correcting ADA deficiencies. Upon information and belief, Davis made this offer to gain plaintiff's confidence and trust so plaintiff would continue to provide consulting services and make recommendations to correct ADA violations and bring the existing Wal-Mart stores into compliance without cost to Wal-Mart.

97. On that same day, Davis and plaintiff also discussed plaintiff's revised Proposed Plan of Action, which included existing Wal-Mart stores in New England in addition to the existing Wal-Mart stores in Florida and California, previously agreed to. Davis voiced no objection to extending the plan to include existing Wal-Mart stores in New England.

98. Ms. Davis told plaintiff that she was "very busy" during the holidays, but she would "make sure" she and plaintiff met to discuss further working arrangements between plaintiff and defendant "after the holidays." Despite her promises to do so, Ms. Davis never followed through on these promises. Meanwhile, upon information and belief, defendant continued to misappropriate and implement confidential recommendations and proposals from plaintiff's confidential Survey Report at various existing and new Wal-Mart stores in Central Florida and elsewhere.

99. Davis, on behalf of defendant, made these and other false statements with the expressed purpose of inducing plaintiff to rely upon these statements, to complete the surveys, and

20

to provide the trade secrets to the defendant at no cost to the defendant so that defendant could wrongly and unlawfully obtain the services of plaintiff and the trade secrets without having to pay for them.

100.    Davis knew these statements were false when she made them to plaintiff on behalf of the defendant, or, in the alternative, she knew she was without knowledge of the truth of these statements.

101.    Davis intended plaintiff to rely upon the above referenced false statements of material fact.

102.    Plaintiff relied upon defendant's false statements of fact, continued his survey of existing Wal-Mart stores, and eventually provided to defendant valuable, confidential trade secrets.

103.    Defendant's actions constituted fraudulent misrepresentation, upon which plaintiff reasonably relied, and plaintiff has suffered damages in excess of $15,000.00.

Wherefore, plaintiff demands judgment for damages and costs against the defendant.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION

104.    Plaintiff realleges the factual allegations in paragraphs 7-36 and 90-103.

105.    Defendant intentionally made false statements of fact and material omissions to plaintiff, concerning the business relationship between the parties and the true intention of defendant to misappropriate plaintiff's trade secrets for its own use.

106.    In the exercise of reasonable care under the circumstances, defendant should have known that the statements were false.

107.    Defendant's actions constituted negligent misrepresentation, upon which plaintiff reasonably relied, and plaintiff has suffered damages in excess of $15,000.00.

21

Wherefore, plaintiff demands judgment for damages and costs against the defendant.

## COUNT IX
## BREACH OF ORAL CONTRACT

108.      Plaintiff realleges the factual allegations in paragraphs 7-36.

109.      On or about July 15, 2005, Doug Bryant, the Senior Architect for defendant, offered, on behalf of defendant, to retain plaintiff for ADA consulting and general contracting services for the modification of existing Wal-Mart stores in the states of Florida and California to become ADA compliant.

110.      Plaintiff accepted defendant's offer and extended his professional services to survey existing Wal-Mart stores in Florida and California to identify and analyze those stores for ADA compliance.

111.      A term of the contract was that defendant would compensate plaintiff if defendant used any of plaintiff's trade secrets provided in the Survey Report or other confidential information provided to defendant by plaintiff.

112.      Defendant knowingly used plaintiff's trade secrets provided in the Survey Report and other confidential information provided by plaintiff to defendant to identify, modify and correct numerous ADA violations at existing Wal-Mart stores in the state of Florida and elsewhere.

113.      On January 3, 2008, Plaintiff demanded payment for defendant's use of plaintiff's services pursuant to the agreement.

114.      Defendant breached the contract by refusing to pay for plaintiff's services.

115.      Defendant has been justly enriched by plaintiff's completion of the contract.

116.     Plaintiff is entitled to damages in the amount of his services or in the alternative plaintiff is entitled to restitution for the unjust enrichment of the defendants by their breach of the contract and use of plaintiff's services.

Wherefore, plaintiff demands judgment for damages and costs against the defendant.

## COUNT IX
## BREACH OF IMPLIED CONTRACT

117.     Plaintiff realleges the factual allegations in paragraphs 7-36.

118.     Defendant freely and willingly received plaintiff's proprietary materials pursuant to an express and implicit understanding that the confidential work product was not to be used without plaintiff's permission.

119.     As such, an implied contract arose by operation of law between plaintiff and defendant.

120.     A term of the implied contract was that defendant would compensate plaintiff if defendant used any of plaintiff's trade secrets provided in the Survey Report or other confidential information provided to defendant by plaintiff.

121.     Defendant knowingly used plaintiff's trade secrets provided in the Survey Report and other confidential information provided by plaintiff to defendant to identify, modify and correct numerous ADA violations at existing Wal-Mart stores in the state of Florida and elsewhere.

122.     Defendant has been justly enriched by plaintiff's completion of the contract.

123.     Plaintiff is entitled to damages in the amount of his services or in the alternative plaintiff is entitled to restitution for the unjust enrichment of the defendants by their breach of the contract and use of plaintiff's services.

Wherefore, plaintiff demands judgment for damages and costs against the defendant.

23

Respectfully submitted,

JOHN M. BRINGARDNER, ESQ.
Florida Bar No. 345512

ALLEN & MURPHY, P.A.
429 S. Keller Road
Orlando, Florida 32810
Tel:  407.838.2000
Facsimile: 407.838.2022
Attorneys for Plaintiff

24

# Disclaimer & Disclosure Statement
## Submitted to
## Wal-Mart Stores, Inc
By
### ADA Consultants and Advisors, Inc (ADACA)
### October 19, 2005
*Updated June 14, 2006*

### Disclaimers
The owner of this Executive Summary Report, the Detailed Report, and the accompanying schedules is ADA Consultants and Advisors Inc. As such ADACA, Inc. enjoys all of the privileges normally associated with ownership in accordance with the laws of the State of Florida. The accompanying reports entitled "Report of Findings ADA Survey Results" and separately the "Report of Findings ADA Survey Results: Numerical Executive Summary of Findings", are confidential reports for the internal and exclusive corporate viewing of Wal-Mart employees, executives, and board members, and for ADACA, Inc. use as owner.

Should Wal-mart Stores Inc., through ongoing discussion, decide to pay an agreed upon fee for this entire report, then the ownership rights shall transfer exclusively to Wal-Mart Stores Inc. with all of the rights and privileges normally associated with the ownership of ADA reports in a vendor-customer relationship.

The attached reports contain a number of violations to the Accessibility Standards as outlined in the Americans with Disabilities Act (ADA) of 1990 Title III and, in appropriate California stores, the California Title 24 Accessibility Standards. However, not all aspects of the elements of each store were examined. Wal-Mart Stores require a more Customized detailed Survey tool because of the complexity caused by each stores many ADA required elements, and the need for different ADA survey tools for each state that reflect both Federal and State ADA requirements. The California stores surveyed in this study are the only reports that reflect some of the state requirements. All other violations in each non-California store reflect ADA Federal Law violations, not state violations.

The reports mentioned above are not to be considered either as a "Readily Achievable Study" detailing what is or is not structurally possible; or a "Plan of Action" on how to rectify the violations; nor should these reports be considered as an "Implementation Plan" on solving these problems in the field.

The primary purpose of the attached reports is to give Wal-Mart Executives a clear picture of the company's exposure to ADA violations in its stores nationwide toward the objective of ADA Consultants and Advisors securing an exclusive nationwide agreement with Wal-Mart Stores Inc, to provide the following services to solve these violations:

1. Planning & Logistics to Identify, Survey and Repair ADA Violations in all stores nationwide;

Disclaimer Page 1 of 3



2.  Design Detailed ADA Customized Check-List for each state. These Check-Lists will combine Federal requirements with States' requirements, with an eye toward "Equivalent Facilitation;

3.  Perform Field Surveys & Assessments for every store nationwide;

4.  Write detailed reports outlining violations;

5.  Write detailed reports on what is or is not "Readily Achievable" for the Pre-ADA stores;

6.  Develop and recommend a plan of action to complete repairs.

7.  Monitoring the completion of repairs, including working in the field with Wal-Mart managers and contractors to insure compliance;

8.  Conduct Follow-up on Surveys to insure completion, and provide final reports;

9.  Provide Employee Training & Development for Field-Management-Controllable areas like aisles, & fitting rooms;

10. Work with the disabled community in getting input on the Wal-Mart Plan of Action.

## No Fees Due

The survey and reporting process completed as of October 19, 2005 are done completely at the sole expense of ADA Consultants and Advisor, Inc. Wal-Mart stores have not been charged or billed for any of these services, and it owes no monies or re-imbursements of any kind to ADACA Inc.

## Important Disclosures

Jack Pinnock is the President and sole owner of ADA Consultants and Advisors, Inc. ADACA is a Minority owned and Operated firm Certified as such by the Governor of the state of Florida's Office of Diversity.

Mr. Pinnock is the older brother to one Theodore "Ted" Pinnock, Esq., a prominent ADA Plaintiff attorney located in San Diego, California, operating as the Senior Managing Partner in the law firm of Pinnock & Wakefield.  Neither Pinnock & Wakefield, nor Ted Pinnock have any legal, strategic, management, advisory, access or influence of any kind, in the practices, policies, and management of ADA Consultants and Advisors, Inc.

Although Pinnock & Wakefield has never requested that ADACA provide any Expert Testimony in any court of Law in any case involving Wal-Mart, Jack Pinnock is aware that Pinnock & Wakefield has been involved in litigation with Wal-Mart in at least one single case, involving a Pinnock & Wakefield partner, other than Ted Pinnock.  There may or may not have been or are other cases. If there are or were, ADACA and Jack Pinnock have no knowledge or involvement whatsoever.

In addition, Pinnock & Wakefield has submitted and received approval by two Federal Judges of the credentials of Jack Pinnock as an Expert Witness in two Federal Class Action Cases, having absolutely nothing to do with Wal-Mart Stores.  Also, Pinnock & Wakefield once retained Jack Pinnock as a Business Consultant in mid-2003 to advice on the business aspects of the Law firms marketing and strategic direction, and has been periodically retained to informally verify, by simple walk through, if a plaintiff's accusations of ADA violations against a potential defendant are valid or not.  One such walk through was performed by Jack Pinnock in 2003 in a major shopping center in California in which Wal-mart was one of the tenants.

Neither Ted Pinnock or any employee or principal of Pinnock & Wakefield are aware, even in the slightest, of any of the detailed reports or specific ADA violations submitted to Wal-Mart by ADACA, Inc., nor have they been involved with or aware of, in any manner whatsoever, the reports or intents of ADACA with Wal-Mart stores, nor are they aware of even a single store ADACA has visited to serve Wal-Mart.

The only aspect that has been discussed between Ted Pinnock & Jack Pinnock is the need for Pinnock & Wakefield to not be involved in any litigation, in any way, involving Wal-Mart Stores due to an inevitable conflict of interest on the part of Pinnock & Wakefield in any Court of Law, should ADACA be retained by Wal-Mart Stores.

Submitted to Wal-Mart
Wednesday, October 19, 2005
*Updated June 14, 2006*

_____                    _____
        Sign Jack Pinnock,                              Date
President ADA Consultants & Advisors, Inc.

Disclaimer Page 3 of 3





**WAL★MART**
LOGISTICS

Deidre A. [
Director of ADA Se
702 S.W. 8th
Bentonville, AR :
Phone: 479-204
Fax: 479-204
Email: deidre.davis@wal-ma

COMPLIANCE

August 7, 2006

Mr. Jack Pinnock
ADA Consultants and Advisors, Inc.
1127 Beverly Way
Orlando, FL 32818

Dear Mr. Pinnock,

We received your letter of June 12 and your email of July 18 regarding your proposal to
provide consulting services to Wal-Mart. Wal-Mart appreciates all the time and effort
that went into the report you prepared. We respectfully disagree with your conclusions.

Wal-Mart's stores and Sam's Clubs comply with Title III of the Americans With
Disabilities Act and similar state and local requirements. Wal-Mart strives to be an
industry leader in providing excellent customer service to all its customers, including
those customers with disabilities. All our facilities and fixtures are reviewed and
evaluated as necessary for accessibility and all Wal-Mart's facilities meet or exceed ADA
and state law requirements. In fact, as you know, Wal-Mart has been recognized as
innovative and responsive to the needs of its customers with disabilities.

After thorough consideration of your proposal, Wal-Mart's decision is to continue its
current program of compliance and accessibility. Our highly successful program of
providing access to our stores and clubs insures compliance with statutory requirements
and allows us to provide excellent service to our disabled customers. If Wal-Mart
determines at some point in the future that consulting services such as those you propose
would be beneficial, your organization would be welcome to submit a proposal for
consideration.

Thank you for your interest in Wal-Mart. If you have questions, please feel free to
contact me.

Sincerely,

Deidre A. Davis
Director,
ADA Services

cc: Linda Whittaker

EXHIBIT
"B"

Return of Materials                                                                     Page 1 of 2

## Jack Pinnock

**From:**     Jack Pinnock [jpinnock@adaca.net]
**Sent:**     Saturday, September 02, 2006 8:47 AM
**To:**       'Deidre Davis'
**Cc:**       'linda.whittaker@wal-mart.com'; 'Doug.Bryant@wal-mart.com'
**Subject:**  RE: Return of Materials

Dear Deidre:
Below is a copy of my original email request, including mailing address.  I would appreciate your sending everything requested below so I do not have to concern myself with whether or not eyes outside Wal-mart have seen my work, which would be in violation of the Stipulation of the use of the research.
Thank You
J

Dear Deidre:
I have received your letter dated August 7, 2006 disagreeing with ADADA's detailed study and conclusions on WAL Mart's actual and projected ADA violations.  In accordance with Wal-Mart policy to return unused products and services sent to it as samples for review, and in accordance with the Disclosure and Stipulation that accompanied the research study, kindly do the following:

1. Return all 4 detailed reports and supporting documents delivered to Doug Bryant, and the one sent to Mr. Scott;
2. Send a statement that none of the research was used in any of Wal-Mart's daily operations, such as the issue of change orders to correct ADA violations outlined in the study, nor given to or shared with any sources outside (especially potential ADA Consultant competitors) of Wal-Mart employees, officers and or directors, as outlined in the Disclosure and Stipulation agreement.  Otherwise please call me to make payment arrangement for services rendered.

I must say that your statement disagreeing with the studies conclusions is a paradox to me.  I doubt that your architectural staff, nor any professional ADA consultant would agree that Wal-Mart is not facing extensive ADA violation exposure, especially in its older stores.  I have not only surveyed your stores, but talked one-on-one with several of your disabled customers as I traveled the nation on your behalf.  They also disagreed with your statement.  I even witnessed a disabled customer in a heated debate with one of your managers concerning the violations in the parking area.  The manager called me over to help calm the customer which I did.  I did thorough homework for Wal-Mart to help with your voluntary ADA compliance objectives.

Best Regards, Jack Pinnock

Mail to **ADA Consultants & Advisors Inc.**
**www.adaca.net**
*Jack Pinnock, President*
1127 Byerly Way Orlando, FL 32818
Minority Business Enterprise (MBE) Certified
State of Florida Office of Diversity

**From:** Deidre Davis [mailto:Deidre.Davis@wal-mart.com]
**Sent:** Friday, September 01, 2006 1:39 PM
**To:** Jack Pinnock
**Subject:** Return of Materials

3/7/2008

EXHIBIT
"C"

Return of Materials                                          Page 2 of 2

Mr. Pinnock.

Kindly verify the address you want me to use in returning the materials (eg. CA or FL).  I am sending same to you on
Tuesday.

1127 Byerly Way
Orlando, Florida 32818

Take care.

 Deidre A. Davis
Director, ADA Services
Employment Compliance Division
(479)204-8497
Deidre.Davis@WAL-MART.com


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\* This email and any files transmitted with it are confidential
and intended solely for the individual or entity to whom they are
addressed. If you have received this email in error destroy it
immediately. \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* Wal-Mart Confidential \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

3/7/2008

## Jack Pinnock

**From:**    Jack Pinnock [jpinnock@adaca.net]
**Sent:**    Wednesday, October 04, 2006 11:01 AM
**To:**      'linda.whittaker@wal-mart.com'
**Cc:**      'Doug.Bryant@wal-mart.com'
**Subject:** Follow Up

Linda:
Have you been able to look into this?
Jack

   Date:  Thu, 28 Sep 2006 11:32:22 -0400 (EDT)
   From:  "Jack Pinnock" <jpinnock2@atlas.valenciacc.edu>   **Block Address**
     To:  Linda.Whittaker@walmartlegal.com
Subject: **Documents**
     Cc: jpinnock@adaca.net, Doug.Bryant@wal-mart.com

:¦◻ Reply   :¦◻ Reply All   :¦◻ Forward   🖨 Print   🗑 Delete

Dear Linda:

I received the Federal Express package on Tuesday. Unfortunately there
were only 2 sets of documents in the package.  The package I received
contained the documents sent to Mr Scott, and, I assume, the set that
the architectural staff gave to Deidre Davis.  However, the three
remaining sets of documents given to the architectural staff were not
included.  Also, there was no written assurance that these plans had
not been shared with architects or others outside of Wal-Mart
employees.  It sure would be nice to put this to rest, and not have to
spend any more time on this.  Can you please have these items sent to
me, and let me know the progress.
I appreciate your help.
Jack Pinnock


### ADA Consultants & Advisors Inc.
#### www.adaca.net
##### Jack Pinnock, *President*

Minority Business Enterprise (MBE) Certified
State of Florida Office of Diversity

3/7/2008



 ADA Consultants and Advisors Inc.

Thursday, January 03, 2008

Doug Bryant Sr. Architect
Wal-Mart Stores, Inc.
Corporate Headquarters
702 SW 8th Street
Bentonville, AR 72716

Dear Doug:

Enclosed is the bill for ADA surveys and services that ADACA, Inc began to render for you in 2005 and concluded in 2006.

As you know, it was not our initial intention to bill these services. However, when you began to distribute our work to other outside consultants, and use the reports to repair stores, you violated the terms of the "Disclaimer & Disclosure Statement" which states the following: "....The accompanying reports entitled "Report of Findings ADA Survey Results" and separately the "Report of Findings ADA Survey Results: Numerical Executive Summary of Findings", are confidential reports for the internal and exclusive corporate viewing of Wal-Mart employees, executives, and board members, and for ADACA, Inc. use as owner."

The reports were not to be distributed to other outside company's or individuals. In addition, the reports were for viewing purposes only, not operational implementation and use to repair stores without the use of ADACA, Inc as the retained consultant in further store evaluation and repair.

Since it has become clear that violations of these clauses have occurred, and that ADACA, Inc. was and is the exclusive owner of the reports that we shared with you, we have enclosed our bill for services rendered.

From a moral standpoint, you personally assured me that Walmart would never take advantage of our small firm by acting in the manner described above. It was also understood that you would avoid acting in any way that would suggest even a hint of any moral misconduct in our interactions, noting that we were not only a small minority owned and managed firm, but also a firm owned and managed by a person with disabilities. I am disappointed, and ashamed, of your conduct in this matter.

You can become the owner of these reports, and cure these violations, as stipulated in the "Disclaimer & Disclosure Statement": "Should Wal-mart Stores Inc., through ongoing discussion, decide to pay an agreed upon fee for this entire report, then the ownership rights shall transfer exclusively to Wal-Mart Stores Inc. with all of the rights and privileges normally associated with the ownership of ADA reports in a vendor-customer relationship." I will also send you the Microsoft Access Database that has been constructed to house and analyze the surveys and reports. I regret that it has come to this.

Please arrange payment so that we have received it on or by Jan 14, 2008.

Sincerely,

Jack Pinnock
Enclosed: Billing Statement dated Jan 4, 2008

7626 Treasure Island Court Orlando, Fl. 32835
407-421-1249
jpinnock@adaca.net or jackpinn1952@aol.com

